UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 7: 15-010-DCR |
| V. | ) ) | |
| ROY DEAN PRATT, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

A jury found Defendant Roy Dean Pratt guilty of possessing a firearm after having been convicted of a felony offense in violation of 18 U.S.C. 922(g)(1). [Record No. 32] As a result of this conviction -- and based on prior felony convictions for wanton endangerment (in 1996 and 2011), trafficking in a controlled substance (in 2001), and facilitation to commit robbery (in 2014) -- Pratt was classified as an Armed Career Criminal. He was sentenced on March 3, 2016, to a term of imprisonment of 320 months, to be followed by a three-year term of supervised release. [Record No. 39] Pratt's subsequent direct and collateral challenges to the sentence imposed have been unsuccessful. [*See* Record Nos. 55 and 77.]

Pratt was 50 years-old at the time of the sentencing hearing and had either been diagnosed with, complained of, or had been treated for, numerous health-related conditions.[1]

---

[1] As outlined in Paragraph 81 of his Presentence Investigation Report ("PSR"), Pratt advised that he "suffers from a heart condition, diabetes, and chronic back pain. . ." [Sealed Record No. 41] According to Pratt, his back pain was the result of a mining accident in which he suffered a broken back. Physician records obtained by the United States Probation Office further reflect that Pratt had been diagnosed with, *inter alia*, anemia, arthritis, coronary artery disease, GERD, Hepatitis C, hyperlipidemia, hypertension, type-2 diabetes, a history of opioid

In light of these conditions, the Court recommended to the United States Bureau of Prisons ("BOP") that Pratt serve his period of imprisonment at a facility that could address his medical needs. [*Id.*] As discussed more fully below, the BOP has complied with this recommendation.

Defendant Pratt recently filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[2]  [Record No. 87, p. 1]  In support, he contends that his health conditions and age make him especially vulnerable to the risks of COVID-19.  Pratt's motion will be denied because he has failed to identify any extraordinary or compelling reasons for release and because the factors under 18 U.S.C. § 3553(a) do not support a sentence reduction.

Requests for compassionate release are evaluated under 18 U.S.C. § 3582(c)(1)(A). The statute provides:

---

dependency, mild degenerative disc disease in the lower lumbar spine and right sciatica, anxiety, chronic dyspepsia (i.e., indigestion), and substance-induced mood disorder.  [Id. at ¶¶ 82, 84 and  85]  He underwent three lumbar disc surgeries, skin grafts for burns on his hand, leg and foot (in 1996), and open-heart surgery (in 2012).  Hospital records further indicate that Pratt was diagnosed with coronary artery disease, chronic airway obstruction, chronic hepatitis C, chronic low back pain, diabetes mellitus with neuropathy, esophageal reflux, fatigue, hypertension, hypoglycemia, iron deficiency anemia, osteoarthritis of the knees, peptic ulcer disease, a prior gunshot wound to his left hand and left wrist, and shortness of breath.  [*Id.* at ¶ 83]

Pratt was admitted to a hospital emergency room on August 27, 2012, due to becoming unconscious on two occasions on that date (the visit was one month after open-heart surgery during which a coronary artery graft was performed).  However, he discharged himself against medical advice because he "was tired of waiting for pain medication . . ." [*Id.*] His substance abuse history is extensive [*id*. at ¶¶ 88-90] and creates a continuing risk to the public when he is released, regardless of his age and debilitating conditions.

[2]      Pratt also renews his request for appointed counsel to assist him in this matter. [Record No. 87, p. 2]  However, he is neither constitutionally nor statutorily entitled to counsel to pursue a § 3582 claim.  *See United States v. Clark*, No. 6: 07- 013-DCR, 2019 WL 7161209, at *2 (E.D. Ky. Feb. 14, 2019) (citing *United States v. Webb*, 565 F.3d 789 (11th Cir. 2009) (collecting cases)).  And appointment is unnecessary here because the issues are "straightforward and resolvable upon review of the record." *Id.*

the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

District courts have full discretion to determine whether extraordinary or compelling reasons justify compassionate release. *United States v. Jones*, 908 F.3d 1098, 1109 (6th Cir. 2020). And they may deny compassionate-release motions "when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking . . ." *United States v. Owens*, 996 F.3d 755, 759 (6th Cir. 2021) (quoting *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)).

Although Pratt cites only "ongoing reasons" in support of his motion, the Court will treat the arguments contained in the attachments as if they are incorporated by reference. [Record No. 87, p. 2] Pratt contends that his manageable health conditions, including hypertension, COPD, and atherosclerosis put his life "in immediate danger and [make] immediate release from [custody] . . . critical."[3] [Record No. 87-1, p. 2] However, neither the risk of future illness nor generalized fears about contracting COVID-19 are sufficient to justify release. *See United States v. Cundiff*, 2020 WL 4949692, at *2 (E.D. Ky. Aug. 24, 2020) (citing *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020) (a "generalized risk of contracting COVID-19 and potentially developing the more

---

[3]   Pratt initially made this argument to the BOP on August 4, 2020. [Record No. 87-1, p. 2]

severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release")).

Next, the Court notes that most, if not all, of the serious physical and mental conditions which form the basis for Pratt's present motion were present at the time of the sentencing hearing. These conditions were fully considered by the Court *before* determining that a term of incarceration of 320 months was the minimum term which should be imposed in this case. And Pratt's medical records further demonstrate that his conditions are well-managed through treatment by BOP medical personnel. [*See* footnote 1 above and Record No. 87-1, pp. 6–7, 9–10 (listing medications used to control Pratt's conditions).] Pratt has not contended that he should be released so that he may receive *better* or *different* treatment from other health care providers.

Regarding Pratt's *fears* of contracting COVID-19, the Court may consider: "(1) [whether] the defendant is at high risk of having complications from COVID-19 **and** (2) [whether] the prison where the defendant is held has a severe COVID-19 outbreak." *United States v. Hood*, 850 F. App'x 428, 430 (6th Cir. 2021) (emphasis added) (quoting *Elias*, 984 F.3d at 520). Pratt is currently being housed at FCI Gilmer.[4] At present, this facility has zero active infections among inmates and only three active infections among members of its staff.[5] Further, of FCI Gilmer's 1,556 inmates, roughly 80% are fully vaccinated against COVID-

---

[4] *See* Find an Inmate, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited October 19, 2021).

[5] *COVID-19 Coronavirus*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited October 19, 2021).

19.[6]  Unlike parts of the Eastern District of Kentucky where Defendant Pratt would likely reside if he were released, there is no severe COVID-19 outbreak at FCI Gilmer and infection rates are not rising due to COVID-19 variants.  Likewise, there is no indication that the facility would be unable to treat or control new infections.

Of equal importance, the factors under 18 U.S.C. § 3553(a) strongly counsel against granting a sentence reduction.  Pratt's offense of conviction was serious.  Pratt, a convicted felon with a history of drug trafficking and violent crime offenses, was found in possession of eight firearms. [Record No. 41, pp. 3, 6–14]  And he possessed these firearms in connection with ongoing drug trafficking activities. [Record No. 46, pp. 14–18]  A substantial sentence is needed to reflect the seriousness of the offense and provide a just punishment.

The PSR further documents that Pratt is a dangerous felon with a significant criminal history.  He has been convicted of multiple counts of terroristic threatening, wanton endangerment, and trafficking in controlled substances. [Record No. 41, pp. 7–13]  He was convicted for his role in an attempted armed robbery that left his brother dead and the victim seriously wounded. [*Id.*, pp. 12–13]  Pratt is an armed career criminal under 18 U.S.C. § 924(e), and he has shown no indication that he will discontinue his life of crime upon release. [*See* Record No. 46, p. 18 (discussing Pratt's status as an armed career criminal).]  Simply put, the

---

[6]  *See COVID-19 Coronavirus*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited October 19, 2021); *FCI Gilmer*, BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/gil/ (last visited October 19, 2021).

sentence originally imposed is necessary to protect the public from further crimes he is likely to commit. *See* 18 U.S.C. § 3553(a)(2)(C).[7]

Pratt originally was sentenced to a 320-month term of imprisonment. [Record No. 39] He has currently served roughly one fifth of that term. To release him now would not serve any sentencing factor identified in 18 U.S.C. § 3553(a). Further, such action would unduly

---

[7] Based on his status as an Armed Career Criminal, Pratt was placed in the highest Criminal History Category (CHC VI) under the United States Sentencing Guidelines. Criminal history is highly predictive of recidivism. In fact, re-arrest rates for individuals in CHC VI is greater than 80% according to a 2016 report from the United States Sentencing Commission. *See Recidivism Among Federal Offenders: A Comprehensive* Overview, United States Sentencing Commission (March 2016). And if criminal history points (as opposed to a CHC classification) are considered, individuals with 10 criminal history points or more have an 81.5% likelihood of being rearrested following release from incarceration. [*Id*.at p. 18] Pratt was assigned 12 criminal history points at sentencing. Several prior convictions were not assessed points under Chapter 4 of the United States Sentencing Guidelines.

The criminal history section of Pratt's PSR also documents numerous arrests that did not result in convictions and assigned criminal history points. [Record No. 41, ¶¶ 56-66] For example, in 2010, Pratt was charged with (1) harassment and (2) terroristic threatening. Descriptive information contained in the PSR indicates that,

> "[p]er the criminal complaint, on August 20, 2010, Pratt allegedly threatened to kill Jerry Williams and his family. Pratt purportedly placed tree limbs and rocks on a roadway and, once Williams exited his truck to remove the obstacles, Pratt produced a knife brandishing toward Williams. In response, Williams allegedly struck Pratt, then Williams returned home. Pratt purportedly followed Williams home, where Pratt brandished a butcher knife at Williams' wife and son. Pratt then allegedly ran into the hills and yelled "all night," stating that, once the Williams family went to sleep, he would "slit all their throats, burn the house down with them in it, and that they would all die and go to Hell together."

[*Id*. at ¶ 64] These charges were dismissed without prejudice under state law after a grand jury failed to return an indictment within 60 days. Thus, no criminal history points were (or should be) assigned to this purported conduct.

Although not summarized in this opinion, the PSR also reflects instances of domestic abuse. [*Id*. at ¶ 72-73]

diminish the seriousness of his criminal conduct. The Court remains persuaded that 320 months imprisonment is the *minimum* term to be served, notwithstanding Pratt's purported COVID-19 concerns.

Being sufficiently advised, it is hereby

**ORDERED** as follows:

1. Defendant's motion for compassionate release [Record No. 87] is **DENIED**.

2. Defendant's construed motion seeking appointment of counsel [Record No. 87] is **DENIED.**

Dated: October 19, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky